589 A.2d 521

**In re GEORGE V.**

**No. 939, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 6, 1991.

---

José Felipé Anderson, Asst. Publi¢ Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kreg Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty., for Montgomery County of Rockville, on the brief), for appellee.

Submitted before BISHOP, WENNER and FISCHER, JJ.

BISHOP, Judge.

The State's Attorney for Montgomery County filed a petition in the District Court, Juvenile Division, alleging that George V., the appellant, stole four shirts valued at under $300 from the Woodward and Lothrop department store in Wheaton Plaza. An adjudicatory hearing was held on May 7, 1990 (Moore, J.). At the conclusion of the hearing the court determined that appellant committed a delinquent act as alleged in the petition, and placed him temporarily on probation under the jurisdiction of the Department of Juvenile Services, pending a disposition hearing. At a subsequent disposition hearing held on June 18, 1990, the court determined that appellant was no longer in need of the services offered by the Department of Juvenile Services, terminated the services, and ordered appellant released from the jurisdiction of the Juvenile Court.

Appellant then filed this appeal, in which his sole complaint is that the evidence was legally insufficient to support the court's finding that he committed a delinquent act. His argument in this regard is entirely unpersuasive. Before addressing that argument, however, we shall consider *nostra sponte* the appealability of the Juvenile Court's order, a closer question than the one raised by appellant.

The question of appealability arises because, in one sense, the judgment below was favorable to appellant. The parties have characterized the court's finding as a "finding of delinquency." This is technically incorrect.

Md.Cts. & Jud.Proc.Code § 3–801(*l*) defines "delinquent child" as "... a child who has committed a delinquent act *and* requires guidance, treatment, or rehabilitation." (Emphasis added.) The process by which a child is determined to be delinquent consists of a two-step procedure: an adjudicatory hearing, then a disposition hearing. Only after the adjudicatory judge finds that the child has

committed a delinquent act *and* the dispositional judge finds that the juvenile is in need of guidance, treatment, or rehabilitation, can a juvenile be classified as a "delinquent child." *In re: Ernest J.,* 52 Md.App. 56, 61, 447 A.2d 97 (1982). The two hearings serve separate and distinct functions. The purpose of the adjudicatory hearing is to determine the truth of the State's allegations in the petition *other* than allegations that the child requires the court's assistance. Cts. & Jud.Proc., § 3–801(b). Nevertheless, a finding that the child committed a delinquent act is not a final, appealable judgment, for the matter of the most appropriate disposition still remains to be determined. Only after the determination as to an appropriate disposition is made does the Juvenile Court's action become a final judgment.

In the instant case the final judgment consists of two determinations: (1) that appellant committed a delinquent act; and (2) that appellant is *not* a delinquent child (because he is not in need of "services"). Appellant wishes to appeal from the first determination because it is unfavorable. He does not wish to appeal from the second determination because it is favorable. But the question arises, is this "favorable" disposition equivalent to a judgment of acquittal in a criminal case, from which no appeal would lie? We think that viewing the judgment in this manner ignores the potential for harmful collateral consequences of a judicial determination that a child has committed a delinquent act.

A "delinquent act" is an act which would be a crime if committed by an adult. Md.Cts. & Jud.Proc.Code § 3–801(k). The finding that a child has committed a delinquent act is similar in many ways to a conviction of a crime, and thus a juvenile charged with delinquency is guaranteed most of the due process protections afforded an adult charged with a crime. *See In re: Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re: Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966). Although the use of a juvenile record is limited in many ways that the use of an adult record is not, a finding that the juvenile has commit-

ted a delinquent act can have harmful consequences in terms of enhanced sentencing for subsequent offenses, or for future employment, for example. Thus it is narrow in the extreme to view the judgment here as analagous to a judgment of acquittal.

A more appropriate analogy is that of a criminal case where a defendant is found guilty of a crime, but not criminally responsible by reason of insanity at the time of its commission. Usually in a criminal case the judgment is not final and appealable without both the verdict and the sentence, for the case is not complete and final before the sentence is pronounced. *Buckner v. State,* 11 Md.App. 55, 58–60, 272 A.2d 828, *cert. denied,* 261 Md. 723 (1971). This is not the case, however, where a defendant is found "guilty, but insane." No criminal sentence may be imposed pursuant to such a verdict, for the legislature has determined that a person who is insane at the time of a criminal act should not be punished. *See Pouncey v. State,* 297 Md. 264, 465 A.2d 475 (1983); *Langworthy v. State,* 284 Md. 588, 399 A.2d 578 (1979). For this reason, and for other reasons, such a verdict may be viewed as favorable to the defendant. *See, e.g., Ford v. Ford,* 307 Md. 105, 512 A.2d 389 (1986) (a convicted killer found to be insane at the time of the slaying may inherit from the victim, notwithstanding the ordinary application of the "slayer's rule").

Nevertheless, a finding of guilty, but insane simply relieves the defendant of liability for punishment under the criminal law. It does not relieve the defendant of many other collateral consequences of a conviction of a crime, such as being prohibited from voting or serving on a jury, or from acquiring various government contracts or licenses, or being inhibited from acquiring future employment, in addition to the social stigma of a criminal conviction. *Pouncey, supra.* And of course, a finding of guilty, but insane carries with it a significant potential for loss of liberty, for upon such a finding the defendant may be confined to a mental institution until it is determined that his release would not constitute a danger to himself or to

others. Md.Health–Gen.Code Ann. § 12–114. For these reasons, the finding of guilt in such cases is appealable, after disposition[1] notwithstanding the "favorable" finding of insanity at the time the crime was committed. Similarly, the finding that appellant did commit a delinquent act cannot be precluded from appellate review by the favorable finding that he is no longer in need of services, and thus is not a delinquent child.

██ Having considered the issue of appealability, we now turn to the question actually posed by the appellant. When reviewing the sufficiency of the evidence to support the finding that appellant committed a delinquent act, the standard of our review is whether the evidence, adduced either directly or by rational inference, enabled the trier of fact to be convinced beyond a reasonable doubt that the appellant committed the act. *See In re: Appeal No. 101*, 34 Md.App. 1, 366 A.2d 392 (1976). The evidence adduced at the adjudicatory hearing may be summarized as follows.

Katherine Brown, the security manager for Woodward and Lothrop in Wheaton Plaza, testified that on May 4, 1989, at about 3:15 p.m., she observed appellant in the men's active wear department of the store. She saw him take three shirts from the display rack and remove them from their hangers. He returned the empty hangers to the rack and concealed the shirts in a grey plastic bag from the Webster's clothing store. He then removed another shirt from the rack, took it off its hanger, returned that empty hanger, rolled the shirt, and concealed it on the inside of his right coat pocket. Appellant then left the men's active wear department. He walked past three working cash

---

1. The disposition in such a case is governed by Md.Health–Gen.Code Ann. § 12–111, which provides that after such a verdict is rendered the court must either order that the defendant be committed to the Department of Health & Mental Hygiene for institutional, inpatient care or treatment, or in certain carefully limited circumstances, order the defendant released. Whether the court holds the defendant for evaluation, or frees him forthwith, this action finally settles some disputed right or interest of the parties and thus constitutes a final judgment. *Langworthy, supra.*

registers and through the candy department. At that point Ms. Brown approached him and brought him back to the security office. There she took three photographs, one showing the three shirts concealed in the Webster's bag, one showing the shirt concealed in appellant's pocket, and one showing all four shirts as they appeared when taken from appellant. Each shirt still had the store tags on it. The photographs were entered into evidence. The evidence consisted entirely of Ms. Brown's testimony and the photographs. Appellant did not testify.

Appellant directs us to Md.Ann.Code, art. 27, § 342(a), which provides:

A person commits the offense of theft when he willfully or knowingly obtains control which is unauthorized or exerts control which is unauthorized over property of the owner, and:

(1) Has the purpose of depriving the owner of his property; or

(2) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or

(3) Uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

Appellant argues here, as he did below, that the evidence was insufficient to sustain a finding of delinquency as a result of the theft, because the State failed to introduce any evidence that the shirts were taken without the permission of Woodward and Lothrop, the owner. He asserts that the requirement that the control be "unauthorized" mandates that the evidence establish that Appellant had no permission to obtain the property. We think the evidence as summarized was more than adequate to establish the offense of theft. A rational trier of fact could directly infer from the events recounted by Ms. Brown that Appellant did not have the permission of Woodward and Lothrop to conceal its merchandise and walk out of the store without paying for it. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781,

2789, 61 L.Ed.2d 560 (1979); *Lee v. State,* 59 Md.App. 28, 40, 474 A.2d 537 (1984). Indeed, it borders on the absurd to suggest otherwise.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.